Jose COLON, Plaintiff,

v.

Correction Officer D. MACK, et al., Defendants.

No. 93 CIV. 2674(KTD).

United States District Court, S.D. New York.

Sept. 5, 1997.

Loren I. Glassman, White Plains, NY, for plaintiff.

Dennis C. Vacco, Attorney General of the State of New York, (Vincent Leong, of counsel), New York City, for defendants.

## MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District Judge.

On April 23, 1993, Plaintiff filed a complaint, pursuant to 42 U.S.C. §§ 1983, 1988, alleging that five correction officers [1] "acted with malice in battering the Plaintiff" while he was an inmate at New York's Green Haven Correctional Facility. As a consequence of the battery, Plaintiff alleged that he "suffered a concussion, numerous bruises and permanent injury, including the dislocation of his left elbow." (Compl. at 4.) Plaintiff demanded compensatory damages in the sum of one million dollars and punitive damages in the sum of one million dollars. The case was initially assigned to Judge Charles L. Brieant, who dismissed Plaintiff's suit for failure to prosecute on May 18, 1994, pursuant to Fed.R.Civ.P. 41(b). The Court of Appeals reversed Judge Brieant's decision, 56 F.3d 5 (1995), and the case was reassigned to my docket.

On March 18 and March 19 of 1997, I presided over a jury trial at which Plaintiff was present throughout. Trial counsel for Plaintiff was Loren I. Glassman, who also signed the complaint and other documents submitted to the Court. Defendants were represented by Vincent Leong, an Assistant Attorney General for the State of New York.

During the afternoon session of the trial's second day, I charged the jury with instructions on how to apply the law to the facts of the case. The jury then retired to deliberate and, a very short time thereafter, returned with a verdict.

THE COURT: Court Exhibit number 1. A note was delivered to the court security officer *within a minute and a half* of the time the jury went back there. "We have a verdict." So we'll hear the verdict.

· · · · · ·

DEPUTY CLERK: Do you find in favor of the plaintiff or the defendants?

FOREPERSON: Defendants.

(Tr. 116.) (Emphasis added.) After excusing the jury, I made my routine trip to the jury room to extend my personal gratitude to the women and men of the jury for taking the time to fulfill their civic duty and to answer any questions.

Upon my return to chambers, I realized that the discussion in the jury charge regarding 42 U.S.C. § 1983 contained an additional factor. This oversight also was brought to my attention in the robing room by counsel.

MR. GLASSMAN: Your Honor, I have only one possible problem in that charge. You said that one of the elements was that the plaintiff had to be a United States citizen. I believe courts have held—

THE COURT: *United States v. Gaggi*[, 811 F.2d 47, 58 (1987) ("United States citizenship is a necessary element of proof under 18 U,S.C. § 241.")].

Mr. GLASSMAN: Well, he is a citizen and there is evidence on the case in the defendants' exhibits that he was born in Puerto Rico, and that is before the jury, but I don't think it has been called to their attention.

THE COURT: They can find it. If it's there, it's in the record. I don't care.

MR. GLASSMAN: Can we point out to them it's in the record?

THE COURT: No, I am not going to point it out. I am not doing your summation for you.

MR. LEONG: I'm satisfied with your instruction, your Honor.

THE COURT: Let's go.

(Tr. 116.) 42 U.S.C. § 1983 states in pertinent part that "... any citizen of the United States or other person within the jurisdiction thereof ...." My charge read:

THE COURT: To establish a claim under 1983, the plaintiff must prove by a preponderance of the evidence four items.

---

1. At the time of trial there were only four defendants as Correction Sergeant "John" Juchnewicz

met an untimely death.

First, that he was a citizen of the United States. Second, that the conduct complained of occurred and was committed by defendants while they were acting under the color and authority of the State of New York. Third, that this conduct deprived the plaintiff of the rights secured to him by the Constitution or laws of the United States by subjecting him to excessive force. Fourth, that the defendants' conduct was the proximate cause of injury and resulting damages sustained by the plaintiff.

(Tr. 105.) Though I did not discuss further the first prong, (*see* Tr. 106) ("I will now talk to you somewhat more about the latter three elements."), mere mention of it was sufficient error to taint the jury instructions. *Plagianos v. American Airlines, Inc.,* 912 F.2d 57 (2d Cir.1990) ("A new trial is warranted if, taken as a whole, the jury instructions gave a misleading impression or inadequate understanding of the law.").

I raised the issue of the improper jury charge at a post-trial conference on April 1, 1997. The jury charge was not the original reason why the April 1 conference was scheduled.

THE COURT: I've been here for a long time and I have seen many cases that were tried, some very good, some of them bad, but none with as little substance as this one had. *If the verdict had been any other than a rapid one for the defendants I would have set it aside.*

There is absolutely no basis for this lawsuit whatsoever. Under the circumstances both sides are advised *to submit to my chambers by the 1st of April* their views as to why Rule 11 should not be invoked and why attorneys' fees should not be assessed under 1988 as against the plaintiff and attorneys' fees and costs against those who signed the complaint or whatever documents have been submitted to the Court.

(Tr. 117.) (Emphasis added.) At the conference, the parties were told that a new trial was a possibility. I asked counsel to speak to their clients, to each other, and then to the Court. Four months later, my chambers contacted the litigants to determine the sta-

tus of the case. The Court subsequently received a letter, dated August 16, 1997, in which Loren Glassman wrote, "Mr. Colon is adamant that we retry [the case]."

Despite Plaintiff's position, however, a new trial may be neither the proper nor the necessary result. The issue of judgment as a matter of law was raised twice during the trial. The first time was after Plaintiff rested.

MR. LEONG: The defendants would move for a judgment as a matter of law under Rule 50. Plaintiff has failed to prove his case against any specific defendant and also that the weight of the evidence, especially in view of the videotape, that no reasonable jury can find in plaintiff's favor.

(Tr. 33.) I denied the motion. The second time was after the defense rested.

THE COURT: I know that there will be a motion to dismiss at the end of the entire case?

MR. LEONG: Yes, your Honor.

THE COURT: You'll get a decision on the motion and we'll go directly through . . . .

(Tr. 72–73.) I did not rule on the motion at the close of all evidence, and the matter was not addressed again. Defendants' failure to file a new motion after the jury returned a favorable verdict and when a judgment has not been entered to date, does not preclude the Court from granting the motion at this stage. *See Nichols Constr. Corp. v. Cessna Aircraft Co.,* 808 F.2d 340, 356 (5th Cir.1985) (holding defendant's failure to file motion for judgment notwithstanding verdict did not prevent district court from granting motion for directed verdict for which court reserved decision).

Accordingly, Defendants shall file with the Court and serve upon Plaintiff's counsel, by Tuesday, October 7, 1997, a legal brief on whether the Court should grant judgment as a matter of law. *See* Fed.R.Civ.P. 50. Plaintiff shall respond to Defendants' submission by Tuesday, October 14, 1997.

The final issue is sanctions. One example of Mr. Glassman's seemingly improper conduct is found in his introduction and inter-

pretation of the videotape of the alleged incident.

MR. GLASSMAN: Your Honor, you see that there is a time on this tape?

THE COURT: Yes.

MR. GLASSMAN: I believe that something actually starts to happen at about 14:23 or 24, *so there is going to be another five minutes of nothing here.*

THE COURT: Let it run.

MR. GLASSMAN: Okay.

(Tr. 27.) (Emphasis added.) Interestingly, the videotape shows that Plaintiff started a fire in his prison cell during this "nothing" period. Mr. Glassman denied that his client had done anything to break a rule or regulation of the prison. Clearly this could be argued only if the evidence of the fire was suppressed. Further, Mr. Glassman's assertion in his opening statement that Plaintiff "was taken from his cell violently," (Tr. 11), is contradicted by the videotape's content.

Nevertheless, the reemergence of the unsettled matter of sanctions five months after trial could chill Mr. Glassman's ability to advocate his client's desire to retry the case. The possible, though tenuous, inference that sanctions are being dangled as a judicial sword to quell a litigant's day in court must be avoided. Thus, sanctions will not be imposed.

SO ORDERED.